UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BROADCAST MUSIC, INC., et. al, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | 1:11-cv-927- SEB-DKL |
| vs. ) | |
| ) | |
| DIAMOND INVESTMENTS, INC., et. al, ) | |
| ) | |
| Defendants. ) | |

### ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(Docket No. 52)

#### I. INTRODUCTION

This is an action for copyright infringement brought pursuant to 17 U.S.C. § 101 *et seq*. (the "Copyright Act"). Currently before the Court is Plaintiffs' Motion for Summary Judgment filed at Docket No. 52. Defendants, who are represented by counsel and, according to the Court's records, received service of Plaintiffs' motion, have not responded, and the deadline for their response under Local Rule 56-1 has long expired. For the reasons set forth below, Plaintiffs' motion for summary judgment is therefore GRANTED.

#### II. FACTUAL BACKGROUND

**A.  The Parties**

Plaintiff, Broadcast Music, Inc. ("BMI") is a "performing rights society," *see* 17 U.S.C. § 101 (defining "performing rights society" to include BMI), that operates on a non-profit-making basis and licenses the right to publicly perform copyrighted musical works on behalf of the copyright owners of these works. (*See* Declaration of Renee S. Wolfe, Dkt. #53-1, ¶¶ 2, 3, 5.) The other plaintiffs in this action are the copyright owners of various compositions which are the subject of this lawsuit. (*Id.* at ¶

4.)

Defendant, Diamond Investments, Inc. ("Diamond"), is an Indiana corporation that, at all times relevant to the complaint, operated a business known as The Juke Box Live. (*See* "Defendants' Answer and Affirmative Defenses with Demand for Jury Trial", Dkt. #18, at ¶ 19.) Diamond has a direct financial interest in The Juke Box Live. (*See id.* at ¶ 21.) Musical compositions are publicly performed at The Juke Box Live in connection with Diamond's operation of that business. (*See id.* at ¶ 20.)

Defendant, Salvatore T. Mazza ("Mazza"), is an officer of Diamond with primary responsibility for the operation and management of that corporation and the Juke Box Live. (*See id.* at ¶ 22.) Mazza has the right and ability to supervise the activities of Diamond and a direct financial interest in that corporation and the Juke Box Live. (*See id.* at ¶ 23.)

**B.    The Controversy**

Prior to February 2010, BMI learned that The Juke Box Live was offering musical entertainment without a license from BMI and without permission from the copyright owners whose music was being publicly performed. (*See* Declaration of Lawrence E. Stevens, Dkt. #53-3, ¶ 3.) Between February 4, 2010 and May 31, 2011, BMI repeatedly informed Diamond and Mazza (collectively, "Defendants"), by both written and telephone communications, of the need to obtain permission for public performances of copyrighted music and offered to enter into a license agreement with Defendants, but they refused. (*See id.* at ¶¶ 3, 5-9, 12.) BMI's letters to Defendants contained varying amounts of information, but consistently informed Defendants that the Juke Box Live would need to obtain a license from BMI to publicly perform BMI-represented copyrighted music. (*See id.* at its Exhibit B.)

After receiving no response to its numerous communications to Defendants advising them of the need to obtain a license from BMI for the public performance of copyrighted musical compositions, BMI sent the first of four letters instructing Defendants to cease such public performance on January

20, 2011. (*See id.* at ¶ 6.)  Additional cease and desist letters were sent on February 24, 2011, March 10, 2011, and April 27, 2011. (*Id.*)  However, The Juke Box Live continued to offer public performances of BMI-licensed music.  On March 19, 2011, a BMI investigator went to the Juke Box Live and recorded the performance of songs owned by the various non-BMI plaintiffs, including the eight works that are the subject of this infringement action. (*See id.* at ¶¶ 10-11 and its Exhibit A.)

### C. Defendants' Lack of Response to Plaintiffs' Summary Judgment Motion

Because Defendants did not respond to Plaintiffs' Motion for Summary Judgment, the Court has before it no argument or evidence to dispute the evidence and argument proffered by Plaintiffs or raising any issues of material fact that would preclude summary judgment.  Further, by failing to answer or object to Plaintiffs' requests for admissions within the time allowed by Federal Rule of Civil Procedure 36(a)(3), Defendants have admitted that: (1) live music is performed at The Juke Box Live; (2) they have no evidence to controvert that the songs alleged to have been performed at The Juke Box Live on the evening of March 19, 2011 and the early morning of March 20, 2011 were performed; (3) between February 2010 and May 2011, BMI offered to grant a license for the public performance of musical compositions at the Juke Box Live; and (4) neither Mazza nor Diamond was licensed by any of the Plaintiffs to publicly perform any of their musical compositions on the evening of March 19, 2011 and the early morning of March 20, 2011.  (*See* Declaration of Peter J. Prettyman, Dkt. #53-4, at ¶¶ 10-12 and its Exhibit A at pp. 4-6, nos. 3-5 and 10-11.)

### III. DISCUSSION

#### A. Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Disputes concerning material

facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id*. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id*. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Illinois, Inc*., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. In responding to a motion for summary judgment, a non-moving party must then "go beyond the pleadings" and point to evidence of a genuine factual dispute that precludes summary judgment. *Id*. at 322-23. The non-moving party must present, by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question, then the court *must* enter summary judgment against [it]." *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994) (emphasis in original).

**B.    Copyright Infringement**

The Copyright Act provides the owner of a copyright with the exclusive right to perform, or to authorize others to perform, the copyrighted work. 17 U.S.C. § 106(4).  Any person who violates this exclusive right is an infringer. 17 U.S.C. § 501(a).  To prevail in an action for copyright infringement, Plaintiffs must establish two elements: "(1) ownership of a valid copyright, and (2) copying of

constituent elements of the work that are original." *Janky v. Lake County Convention & Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Neither element is in dispute.

With respect to the first element, Plaintiffs have provided a detailed schedule of the relevant songs identifying their respective writers, publishers, registration dates and registration numbers, as well as actual copies of the registration certificates establishing the various plaintiffs' ownership of the songs. (*See* Dkt. #53-1, ¶¶ 4-5 and its Exhibit A.)

With respect to the second element, a defendant "copies another's work for purposes of copyright law if he plays it publicly or distributes copies without the copyright owner's authorization." *Janky*, 576 F.3d at 361. Plaintiffs have provided uncontroverted evidence that each of the copyrighted works was publicly played without authorization at The Juke Box Live on the evening of March 19, 2011 and the early morning of March 20, 2011. Moreover, Defendants have tacitly admitted the same by failing to answer or object to Plaintiffs' requests for admissions within the time allowed by Federal Rule of Civil Procedure 36(a)(3).

Having satisfied the elements of their claims of copyright infringement, Plaintiffs are entitled to judgment against both Diamond, the corporate sponsor of the performance, and Mazza, the corporate officer directly controlling The Juke Box Live who has a direct financial interest in The Juke Box Live's activities. *See Broad. Music, Inc. v. Niro's Palace, Inc.*, 619 F. Supp. 958, 961 (N.D. Ill. 1985) ("not only is the performer liable for infringement, but so is anyone who sponsors the performance.") (*citing Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 157 (1975)); *Sailor Music v. Mai Kai of Concord, Inc.*, 640 F. Supp. 629, 633 (D.N.H. 1986) ("a corporate officer will be liable as a joint tortfeasor with the corporation in a copyright infringement case where the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement.");

*Broad. Music, Inc. v. Peppermint Club, Inc.*, 229 U.S.P.Q. 534, 538, 1985 WL 6141 (N.D. Ohio Dec. 16, 1985) (quoting *Warner Bros., Inc. v. Lobster Pot, Inc.*, 582 F. Supp. 478, 483 (N.D. Ohio 1978)) ("A corporate officer is jointly and severally liable, with his corporation for copyright infringement if he (1) 'had the right and ability to supervise the infringing activity', and (2) 'has a direct financial interest in such activities'.").

## C.     Statutory Damages

The Copyright Act empowers a plaintiff to elect to receive an award of statutory damages "in a sum of not less than $750 or more than $30,000" per infringement in lieu of an award representing the Plaintiffs' actual damages and the Defendant(s)' profits. 17 U.S.C. § 504(c)(1). Furthermore, "[i]n a case where the copyright owner sustains the burden of proving . . . that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Within these statutory limits, the assessment of damages is within the discretion of the court. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231-32 (1952).

Statutory damages are "designed to discourage wrongful conduct . . . . and vindicate the statutory policy." *Id.* at 233. "The court's award should be designed to compensate plaintiffs as well as to punish defendant[s]." *Prater Music v. Williams*, 5 USPQ2d 1813, 1816, 1987 WL 46354 (W.D. Mo. 1987). To further discourage continued abuse and give effect to the Copyright Act, the amount awarded in statutory damages should significantly exceed the amount of unpaid license fees. *See EMI Mills Music, Inc. v. Empress Hotel, Inc.*, 470 F. Supp.2d 67, 75-76 (D. Puerto Rico 2006). As the court in *Prater Music* held: "If the copyright laws are to have any effect, a judgment against [a] defendant must be appreciably more than the amount he would have had to expend to obtain appropriate permission." 5 USPQ at 1816. Music users such as the defendant should be "put on notice that it costs

less to obey the copyright laws than to violate them." *Rodgers v. Eighty Four Lumber Co.*, 623 F. Supp. 889, 892 (W.D. Pa. 1985) (quoting *Music City Music v. Alfa Foods Ltd.*, 616 F. Supp. 1001, 1003 (E.D. Va. 1985)). *See also Halnat Publ'g Co. v. L.A.P.A., Inc.*, 669 F. Supp. 933, 937-38 (D. Minn. 1987).

The court, in its discretion, may also augment the amount of statutory damages awarded to reflect the degree of culpability exhibited by the defendant. *See Wow & Flutter Music, Hideout Records & Distributors, Inc. v. Len's Tom Jones Tavern, Inc.*, 606 F. Supp. 554, 555-57 (W.D.N.Y. 1985). "Where a defendant continues to infringe upon copyrights despite repeated warnings, courts have found defendant's conduct to be willful." *Prater Music*, 5 USPQ2d at 1815; *accord Int'l Korwin Corp. v. Kowalczyk*, 855 F. 2d. 375, 383 (7th Cir. 1988); *Nick-O-Val Music*, 656 F. Supp. at 829; *Rodgers*, 623 F. Supp. at 892.

The record supports a finding that Defendants deliberately violated Plaintiffs' rights. For more than a year, between February 4, 2010 and May 31, 2011, BMI sent letters to Defendants repeatedly advising them of the need to enter into a license agreement. (Dkt. #53-3, ¶¶ 3, 5-8, 12.) BMI representatives also telephoned Defendants on 55 occasions to advise them of the need to enter into a license agreement. (*Id.* at ¶ 8.) On January 20, 2011, BMI sent Defendants a letter informing them that they must immediately cease unauthorized performances of BMI-licensed music, with multiple follow up letters. (*Id.* at ¶ 6.) Despite these efforts to secure Defendants' attention to these matters, a BMI investigator made an audio recording and a written record of the public performance of eight BMI-licensed compositions *after* that date. (*Id.* at ¶¶ 10-11 and its Exhibit A.)

Here, Plaintiffs request an award of $3,000.00 per infringement in statutory damages, for a total award of $24,000.00. Courts considering awards of statutory damages have recognized that awards in the range of $3,000.00 per infringement or higher are appropriate in cases where the infringement resulted from deliberate indifference toward copyright laws. *Divine Mill Music v. Blackmon's Inc.*,

7

2008 WL 4853575, at *2 (S.D. Ill. Nov. 5, 2008) (awarding "$7,000 per work infringed, for a total principal amount of $42,000."); *Broad. Music, Inc. v. Pub Dayton, LLC*, 2011 WL 2118228, at *4 (S.D. Ohio May 27, 2011) (awarding $7,750.00 for each of 4 copyright violations); *Broad. Music, Inc. v. Entm't Complex, Inc.*, 198 F. Supp. 2d 1291, 1296 (N.D. Ala. 2002) (awarding $3,909.09 for each of 11 copyright violations). Given Defendants' willful disregard of the copyright laws, the Court finds an award of $3,000.00 for each of the eight infringements in this case, or $24,000.00 in total, to be reasonable and well within the statutory range.

### D.     Attorney's Fees and Costs

The Copyright Act expressly provides that the "court may also award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. Because it is consistent with the purpose of the Copyright Act, courts routinely award the reasonable fees incurred by a Plaintiff asserting its rights. *See Broad. Music, Inc. v. Fox Amusement Co.*, 551 F. Supp. 104, 109-10 (N.D. Ill. 1982); *Milene Music, Inc. v. Gotauco*, 551 F. Supp. 1288, 1297-98 (D.R.I. 1982).

"[A] finding of willful infringement will support an award of attorney's fees." *See Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1230 (7th Cir. 1991). Willful infringement is established where evidence demonstrates that defendants were provided notice of their need to obtain a license, but failed to do so and continued to publicly perform copyrighted works. *See id.* at 1227-28. Here, BMI communicated with Defendants concerning their need to obtain a license for nearly a year-and-a-half before filing this action. (*See* Dkt. #53-3 at ¶¶ 3, 5-8, 12 and its Exhibit B.) There is no question that Defendants were on notice of their need to obtain a license for the public performance of the copyrighted material at the time the infringements occurred. Consequently, Plaintiffs were forced to engage in litigation to enforce their rights and should be awarded full attorney's fees.

The Copyright Act also expressly provides that the court "in its discretion may allow the

recovery of full costs by or against any party . . . ." 17 U.S.C. § 505. Under this provision, courts have allowed full recovery by the prevailing party of its reasonable costs. *See Milene Music*, 551 F. Supp. at 1297. There are no factors which would militate against an award of the Plaintiffs' costs in the present case. Such an award is particularly appropriate in light of the Defendant's protracted deliberate misconduct and the statutory purpose of encouraging private enforcement of the Copyright Act.

Plaintiffs' counsel has submitted his declaration stating that in the light of his experience, the nature of the case, and the services provided, Plaintiffs have incurred reasonable fees and costs in this matter of $17,985.55. (Dkt. #53-4 at ¶¶ 6, 9.) Fees in excess of what would normally be incurred in a similar action were incurred in this particular matter because Defendants withdrew from a rigorously negotiated settlement agreement at the eleventh hour, also necessitating that the Court's reset most of the litigation deadlines. (*See id*. at ¶ 8.) Accordingly, the Court awards Plaintiffs their reasonable costs and attorney's fees in the amount of $17,985.55.

**E.     Injunctive Relief**

Musical performances are presumably important to the operation of The Juke Box Live. "If music did not pay, it would be given up." *Herbert v. Shanley Co.*, 242 U.S. 591, 595 (1917). It is clear from the fact that a BMI investigator logged unauthorized performance of music in the BMI repertoire – long after Defendants' receipt of numerous calls and letters from BMI – that Defendants did not give it up. To the extent it still operates, The Juke Box Live will likely continue to make unauthorized performances of BMI music. (*See* Dkt. #53-3 at ¶¶ 10, 15.)   BMI therefore seeks injunctive relief to prevent further unauthorized performances and copyright violations. *See Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 492 (6th Cir. 2007).

BMI seeks an injunction against Defendants that would prevent them from publicly performing music in BMI's repertoire without a license. BMI has offered The Juke Box Live a blanket license that

would permit Defendants to publicly perform any of the musical works in BMI's repertoire, which currently includes approximately 7.5 million musical works, or approximately one-half of the songs played on the radio each year in the United States. However, Defendants have consistently refused to enter into the license agreement.

Section 502(a) of the Copyright Act provides that the Court may grant final injunctions "to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). As one court has stated in a case similar to ours:

> A permanent injunction is especially appropriate where a threat of continuing infringement exists. The threat of continuing infringement is substantial in the present case. Niro's provided unauthorized performances of copyrighted musical compositions on its premises after receiving oral and written notices of infringement and demands to stop such infringement from BMI. This behavior indicates a willful disregard of copyrights held by BMI and should be permanently enjoined.

*Niro's Palace*, 619 F. Supp. at 963 (citation omitted). Here, as in *Niro's Palace*, Defendants willfully disregarded the copyrights held by Plaintiffs as well as oral and written notices, and continued to perform copyrighted musical compositions for years with no license to do so. Courts have consistently held that a "showing of past infringement and a substantial likelihood of future infringement justifies issuance of a permanent injunction." *Bridgeport Music*, 507 F.3d at 492 (citation omitted). Moreover, "injunctive relief may be 'appropriate to ensure that the misconduct does not recur as soon as the case ends.'" *Elektra Entm't Grp., Inc. v. Jones*, 2007 WL 1395573, at *2 (N.D. Ind. May 10, 2007) (quoting *BMG Music v. Gonzalez*, 430 F.3d 888, 893 (7th Cir. 2005)). In *Milene Music*, the Court granted injunctive relief stating that "[t]he history of defendants' actions . . . exhibits an unfortunate tendency conveniently to ignore, from time to time . . . the plaintiffs' proprietary rights." *Milene Music*, 551 F. Supp. at 1295-96. *See also Sailor Music*, 640 F. Supp. at 634-35. In this instance, where the Defendants are as yet unlicensed and may continue to offer unauthorized performances of the Plaintiffs'

music, broad injunctive relief is appropriate and necessary. Accordingly, BMI is entitled to an injunction enjoining Defendants from publicly performing BMI's copyrighted music without a license.

### IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment is GRANTED. Accordingly:

1.   Plaintiffs are entitled to recover from Defendants Diamond Investments, Inc. and Salvatore T. Mazza, jointly and severally, statutory damages in the amount of three thousand dollars ($3,000.00) for each of the eight (8) acts of copyright infringement, for a total of twenty-four thousand dollars ($24,000.00);

2.   Plaintiffs are entitled to recover from Defendants Diamond Investments, Inc. and Salvatore T. Mazza, jointly and severally, full costs in this action, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505, in the amount of seventeen thousand nine hundred eighty-five dollars and fifty-five cents ($17,985.55);

3.   Plaintiffs are entitled to recover from Defendants Diamond Investments, Inc. and Salvatore T. Mazza, jointly and severally, post-judgment interest on the full amount of the Court's judgment, pursuant to 28 U.S.C. § 1961; and

4.   Defendants Diamond Investments, Inc. and Salvatore T. Mazza, each individually, as well as their agents, servants, employees, and all persons acting under their permission or authority are permanently enjoined and restrained from infringing, in any manner, the copyrighted musical compositions licensed by Broadcast Music, Inc.

A separate judgment shall issue.

IT IS SO ORDERED.

Date:  04/17/2013

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Anthony V. Disomma
STEVEN B. GELLER ATTORNEY AT LAW
fivestarjudge@gmail.com

Steven B. Geller
STEVEN B. GELLER LAW OFFICE
steven.geller@sbcglobal.net

Peter Jon Prettyman
TAFT STETTINIUS & HOLLISTER LLP
pprettyman@taftlaw.com